IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SHIRTORYA CHRISTIAN,

    Petitioner,

v.

GENE M. JOHNSON, DIRECTOR,

    Respondent.

Civil Action No. 3:07-CV-336

## MEMORANDUM OPINION

THIS MATTER is before the Court on Gene M. Johnson's Motion to Dismiss the Petition for a Writ of Habeas Corpus filed by Shirtorya Christian. For the reasons stated below, Johnson's Motion shall be GRANTED, and Christian's Petition for Writ of Habeas Corpus shall be DENIED.

1.

Few, if any, of the facts of this case are disputed. In July 1999, when she was seventeen, Christian met Michael Gaskin. They began dating, and in August 2000, shortly after Christian graduated from high school, the couple began living together. Two months later, they were engaged to be married. By that time, however, Gaskin was abusing Christian verbally, emotionally, and physically, at times beating her daily. The next year, Christian became pregnant, but she lost her child on January 28, 2002, one day after Gaskin brutally punched her in the stomach. At that time, Christian weighed only about eighty-seven pounds.

1

In spite of Gaskin's abuse, Christian stayed with him. She fell into a depression, however, and in June 2002 she was prescribed Remeron, an anti-depressant. Several weeks later, on July 11, 2002, Gaskin locked Christian in their apartment while he used drugs and abused her, hitting her in the head with a vase, dragging her down the steps of the apartment by her hair, and punching her repeatedly. In the evening of July 12, while Gaskin was occupied, Christian managed to escape from the apartment. She spent several hours in her car, which was parked nearby; then, early in the morning of July 13, she returned to the apartment, where she found Gaskin asleep with another woman, Ijeoma Uduma. At her trial, Christian testified that her next memory was of leaving the apartment to drive to her mother's house. Before she did so, however, Christian picked up Gaskin's gun, which was lying on a chair near the bed where Gaskin was sleeping with Uduma, and shot the pair, killing both of them.

After Christian reached her mother's house, she contacted the police and cooperated with their investigation. Subsequently, on April 24, 2003, Christian was convicted by the Circuit Court of Chesterfield County of two counts of second-degree murder and two counts of using a firearm, and she was sentenced to twenty years' imprisonment. She appealed her conviction, which the Virginia Court of Appeals and the Virginia Supreme Court denied. Christian filed a petition for a writ of habeas corpus, which was denied by the Circuit Court of Chesterfield County and the Supreme Court of Virginia. After she exhausted her state remedies, Christian asked this Court for relief.

2.

A federal court may review a petition for a writ of habeas corpus by a person serving a sentence imposed by a state court only on the ground that the person is being held in custody "in violation of the Constitution or laws or treaties of the United States."[1] 28 U.S.C. § 2254(a). The federal court may grant the petition on the basis of a claim that was decided on its merits by the state court only if that decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d), (e).

A decision is "contrary to" federal law if it resolves a question of law in a way that contradicts the relevant Supreme Court precedent(s), or if it yields a result that differs from the outcome of a Supreme Court case involving "materially indistinguishable" facts. Williams v. Taylor, 529 U.S. 362, 405–06, 413 (2000) (O'Connor, J., writing for the Court). A decision applies federal law unreasonably if it is based on the correct legal principle but applies that rule unreasonably to the facts of a case. Id. at 413. An application of a rule may be unreasonable even if another court has applied the rule in the same way; whether a decision is reasonable is determined by an objective, not a subjective, test. Id. at 409–10. But, the fact that a decision applies federal law incorrectly does not entail that it is unreasonable. Id. at 411. In addition, the Fourth Circuit has ruled that a decision applies

---

[1] Thus, the Court may not consider Christian's argument that her conviction violates the Virginia Constitution.

3

federal law unreasonably if it applies a rule in a context that it should not govern, or fails to apply a rule to a new context when doing so would be appropriate. Green v. French, 143 F.3d 865, 869-70 (1998); see Williams, 529 U.S. at 408-09 (declining to decide how to treat "extension of legal principle" cases). Finally, findings of fact by a state court are "unreasonable" only if a petitioner shows by clear and convincing evidence that they are incorrect. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007).

Thus, under section 2254(d)(1) if a state court applies the correct legal rule to the facts of a case in a reasonable way, a federal court may not grant a writ of habeas corpus, even if the federal court would have decided the case differently. See Williams, 529 U.S. at 406-08.

### 3.

Christian challenges her conviction on two grounds. First, she argues that her jury was not given the option of convicting her of manslaughter solely because Virginia does not recognize that an unmarried person is capable of acting in the heat of passion,[2] thereby violating her rights to due process and equal protection under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Christian also contends that her attorney did not assist her effectively because he failed to make that argument. Second, Christian argues that the fact that she was not allowed to present expert testimony about her state of mind at the time she shot Gaskin and Uduma violated her rights to due process, to a

---

[2] The judge presiding over Christian's trial, citing Robertson v. Virginia, 525 S.E.2d 640, 645 (Va. Ct. App. 2000), stated that it was not "appropriate to give the instruction dealing with heat of passion as a factor in negating malice" because "these parties [we]re not [married]." Tr. of April 23, 2003 at 224-25.

4

fair trial, and to offer evidence in her favor under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

A.

The Court may not consider Christian's equal protection argument because she did not present it when she appealed her conviction.

A federal court generally may not review a challenge to a conviction by a state court on the basis of federal law if the petitioner failed to comply with the state's rules of procedure for bringing her claim, depriving the state of the opportunity to correct any problems with the conviction. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). That "procedural default" doctrine reflects concerns of comity and federalism, O'Sullivan v. Boerckel, 526 U.S. 838, 844–45 (1999), principles that may be set aside only if (1) the petitioner justifies her failure to comply with the state's rules of procedure and shows that she was prejudiced by the default, or (2) review by the federal court is necessary to prevent a "fundamental miscarriage of justice." Edwards, 529 U.S. at 451. The Supreme Court has not specified what constitutes a good reason for a procedural default, see id., but it has held that a petitioner's failure to present a claim in a state proceeding is justified only if it was impeded by an "objective factor external to [her] defense." McCleskey v. Zant, 499 U.S. 467, 493 (1991). For example, a procedural default may be excused if "the factual or legal basis for the [defaulted] claim was not reasonably available" at the time of the state proceeding, or if the petitioner's attorney did not assist her effectively. Id. at 494. It is more difficult to prove that a "fundamental miscarriage of justice" will result if a federal court does

not review a claim: a petitioner must show that her conviction "probably" resulted from a constitutional error. See Schlup v. Delo, 513 U.S. 298, 321, 324 (1995) (noting that this exception applies only in "extraordinary case[s]").

The procedural default doctrine prohibits the Court from considering Christian's equal protection argument because, under Virginia law, a petitioner for a writ of habeas corpus may not receive relief on the basis of an argument that she did not present on appeal, Slayton v. Parrigan, 205 S.E.2d 680, 682 (1974); see Vinson, 436 F.3d at 417 (stating that the procedural bar established by Slayton "constitutes an adequate and independent state law ground for default"), and Christian did not appeal her conviction on the basis of her equal protection argument to the Virginia Court of Appeals or the Virginia Supreme Court. In its opinion denying Christian's appeal, the Virginia Court of Appeals did not indicate that she invoked her right to equal protection in any way – either by using the words "equal protection" or making an argument that amounts to an equal protection claim. See Christian v. Virginia, No. 2065-03-2 (Va. Ct. App. Mar. 31, 2004), aff'd mem., No. 2065-03-2 (Va. Ct. App. June 21, 2004). The Virginia Supreme Court affirmed Christian's conviction without any explanation, see Christian v. Virginia, No. 041745 (Dec. 17, 2004), reh'g denied mem., No. 041745 (Jan. 26, 2005), but in her brief to the Virginia Supreme Court, Christian argued only that her conviction violated her "right to due process under the Fifth and Fourteenth Amendments of the United States Constitution," Pet'r's Pet. for Appeal at 16 (emphasis added), and that she was entitled to an instruction about manslaughter on

the basis of the evidence, see id. at 18–19 – she did not present her equal protection argument.

Christian challenged her conviction on that ground for the first time when she sought collateral relief from the Chesterfield County Circuit Court, which rejected her claim, citing Slayton. See Christian v. Johnson, No. CL06HC-199, at 2 (Va. Cir. Ct. June 30, 2006). Since the Virginia Supreme Court affirmed that decision without issuing a "reasoned opinion," see Christian v. Johnson, No. 062004 (Dec. 20, 2006), reh'g denied mem., No. 062004 (Mar. 9, 2007), Christian's equal protection argument was presumably rejected on procedural grounds, not on its merits. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).[3] That presumption can be refuted by "strong evidence," id. at 804, but Christian has not offered any evidence suggesting that her equal protection argument was reviewed on its merits by a state court.

---

[3] In Ylst, a person challenged his conviction for murder by a California court, contending that expert testimony should not have been admitted at his trial and that his attorney did not assist him effectively. 501 U.S. at 799. The California Court of Appeal affirmed his conviction, ruling that he could not challenge the admission of the expert testimony on appeal because he failed to do so at his trial. Id. After the California Supreme Court denied his petition for review, he sought collateral relief, which was denied by four state courts, including the California Supreme Court twice, without opinion. Id. at 799–800. A federal district court then rejected his claim of ineffective assistance of counsel on its merits, and ruled that the petitioner's procedural default – his failure to challenge the admission of the expert testimony at trial – precluded federal review of that claim. Id. at 800. After the Ninth Circuit reversed the latter ruling, id. at 800-01, the United States Supreme Court held that if a state court rejects a claim of federal law in a "reasoned opinion," a subsequent "unexplained order[]" upholding that judgment is presumed to reject the claim on the same ground – i.e., if the "reasoned opinion ... explicitly imposes a procedural bar," the subsequent order is presumed to have affirmed that ruling on procedural grounds. Id. at 803.

Christian's default clearly prejudiced her, but she has not shown a good reason why she did not present her equal protection argument on appeal. Nor has she shown that she "probably" would not have been convicted of murder if her jury was given the option of convicting her of manslaughter. Christian has provided affidavits from two of the jurors that convicted her stating that they "would have [convicted her of] manslaughter" if they had been given the option to do so. See Pet'r's Pet. for a Writ of Habeas Corpus at 9. However, as discussed below, Christian did not present any evidence at her trial that suggests that she was "deaf to the voice of reason" – i.e., acting in the heat of passion – when she shot Gaskin and Uduma. See Hannah v. Virginia, 149 S.E. 419, 421 (Va. 1929) (defining "heat of passion"). Thus, Christian has not shown that a "fundamental miscarriage of justice" will result if the Court does not review her equal protection argument. Accordingly, the procedural default doctrine prevents the Court from doing so.[4]

---

[4] Christian's argument that a jury reasonably could have found that she killed Gaskin and Uduma in the heat of passion, even though she was not married, is intuitively appealing. Even if the Court could evaluate that argument, however, the Virginia courts that have done so did not violate or unreasonably apply clearly-established federal law, precluding the Court from granting Christian relief on this basis. See 28 U.S.C. § 2254(d). The United States Supreme Court has declared that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). But, the Supreme Court has not decided whether married and unmarried people are equally capable of acting in the heat of passion, and thus whether they are "similarly situated" in this context. Christian relies on Eisenstadt v. Baird, 405 U.S. 438 (1972), a case in which the Supreme Court invalidated a statute that permitted only married people to purchase contraceptives, concluding that there was no rational basis for treating married and unmarried people differently in that context, given the fundamental interest (i.e., procreation) involved, id. at 447, 453. Even if Eisenstadt is relevant to this matter, however, it does not clearly establish a rule of law that governs this matter. Since federal law on this issue is not clearly established, the Court could not grant Christian relief on this basis, even if it could review her argument.

B.

Second, Christian argues that the denial of an instruction on manslaughter violated her right to due process.

A defendant's right to due process entitles her "to an instruction on a lesser included offense if the evidence would permit a jury rationally to find h[er] guilty of the lesser offense and acquit h[er] of the greater." Keeble v. United States, 412 U.S. 205, 208 (1973); see Stevenson v. United States, 162 U.S. 313, 314 (1896) (ruling that a defendant was entitled to an instruction on manslaughter if he offered "some evidence upon the subject," even if the evidence was not conclusive); see also Hopper v. Evans, 456 U.S. 605, 612 (1982) (noting that Keeble applies in non-capital cases). Provided that a defendant offers some evidence supporting an instruction on a lesser included offense, the instruction must be given unless the lesser offense is "completely encompassed by the greater" – i.e., if "the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses." Sansone v. United States, 380 U.S. 343, 349-50 (1965).

In this matter, however, the Virginia Court of Appeals found that "not a scintilla of evidence supported a voluntary manslaughter instruction." Christian v. Virginia, No. 2065-03-2, at 5 (Va. Ct. App. Mar. 31, 2004). The court added that "the evidence precluded a finding that [Christian] killed in the heat of passion." Id. at 4. Christian has not shown that those rulings unreasonably applied the rules discussed above. Nor has she shown by clear and convincing evidence that any of the findings of fact underlying the Virginia Court of Appeals' conclusion were incorrect. In fact, after reviewing the transcript of

Christian's trial, the Court agrees that Christian did not offer any evidence that suggests that she acted in the heat of passion. While Christian was not able to remember shooting Gaskin and Uduma, she did not testify that she lost control over herself, that she could not think clearly, or even that she felt angry. Any of those responses would be understandable, given the abuse that Christian endured at Gaskin's hands, but the evidence in this matter does not allow the Court to conclude that a jury rationally could have found that Christian acted in the heat of passion. Thus, while Christian's relationship with Gaskin was clearly traumatic enough to have inspired her to act in the heat of passion, she did not satisfy her burden under Keeble. Thus, the fact that Christian's jury was not instructed about manslaughter did not violate her right to due process.

## C.

Next, Christian contends that her attorney failed to assist her effectively because he did not argue that the jury that convicted her should have been instructed about manslaughter.

To establish a claim for ineffective assistance of counsel, a defendant must show that her attorney's "performance was deficient" and that the defendant was prejudiced by that failure. Strickland v. Washington, 466 U.S. 668, 687 (1984). In other words, the attorney's conduct must have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. A court evaluating the attorney's conduct must "indulge a strong presumption that [it] falls within the wide range of reasonable professional assistance." Id. at 689. Accordingly, a defendant

whose attorney "overlook[ed] one strategy while vigilantly pursuing another" was not denied the effective assistance of counsel. Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987).

The evidence before the Court demonstrates convincingly that Christian's attorney argued that her jury should have been allowed to convict her of manslaughter. He contended that Christian was entitled to the same instructions that a married person would have received because she and Gaskin "h[e]ld themselves out as husband and wife" and "did everything that [married people] would do." Tr. of April 23, 2003 at 226. He also argued that the fact that there are not any reported decisions of cases in which a Virginia court allowed a jury to convict an unmarried defendant of manslaughter "doesn't mean that th[e] instruction is not commonly given." Id. at 227. Moreover, he insisted that a jury should decide whether Christian had "cooled off" from the beating that she received from Gaskin on the night before she shot him. Id. at 228-29. In fact, he reiterated that position on the final day of Christian's trial. See Tr. of April 24, 2003 at 3-5, 6-7. Christian argues that her attorney should have stated explicitly that, by virtue of her rights to due process and equal protection, her jury should have been instructed about manslaughter. But, Christian's attorney clearly – and vigorously – advocated on her behalf; the fact that he did not use certain words does not mean that he failed to provide reasonable assistance. See Williams, 816 F.2d at 950. Thus, the Court finds that Christian's attorney's performance was not deficient.

D.

Finally, Christian argues that her rights to due process, to a fair trial, and to present evidence in her favor were denied because her trial judge refused to allow her to offer expert testimony about her state of mind.

Christian relies on Washington v. Texas, 388 U.S. 14 (1967), a case in which the Supreme Court held that a defendant's right to call witnesses in his favor was violated by a state statute prohibiting people charged in the same crime from testifying on one another's behalf, id. at 23. That case does not clearly establish federal law that governs this case. In fact, the Supreme Court has upheld convictions in which the trial judge refused to allow testimony about a defendant's state of mind. See, e.g., Thomas v. Arn, 474 U.S. 140, 143 (1985) (affirming a denial of a petition for habeas corpus by a woman who was convicted of shooting her abusive common-law husband after her trial judge refused to admit expert testimony evidence about the woman's state of mind and Battered Wife Syndrome). Cf. Clark v. Arizona, 126 S.Ct. 2709, 2731–32 (2006) (affirming that a trial judge may exclude evidence that creates an undue risk of prejudice or confusion).

Thus, the judge presiding over Christian's trial did not violate clearly-established federal law by refusing to admit expert testimony about Christian's state of mind. Nor does the evidence before the Court suggest that he applied clearly-established federal law in an unreasonable way. And, Christian has not shown by clear and convincing evidence that any of the findings of fact by her trial judge were incorrect. Accordingly, the Court may not issue a writ of habeas corpus on this basis, pursuant to 28 U.S.C. § 2254.

4.

For the reasons stated above, Johnson's Motion shall be GRANTED, and Christian's Petition for Writ of Habeas Corpus shall be DENIED.

It shall be SO ORDERED.

> /s/
> ———————————
> James R. Spencer
> Chief United States District Judge

ENTERED this 27th day of December 2007